## No. 11,074.

### MILLER, ET AL. v. LEE, ET AL.

Decided July 6, 1925.

Action for damages for alleged breach of contract. Judgment for defendants.

*Affirmed.*

1. SALES—*Contracts—Construction.* Where cattle were sold under contract, to be delivered at a stated date, subject to the provisions of a feeding contract between the seller and another which contained an option for delivery 30 days sooner, it is held that both contracts should be construed together, and that it was the duty of the buyer to receive and pay for the cattle when delivered back to the owner by the feeder at the earlier date.

*Error to the District Court of Morgan County, Hon. H. E.
Munson, Judge.*

Mr. WALTER S. COEN, Mr. WILLIAM B. PAYNTER, Mr.
OMER T. MALLORY, for plaintiffs in error.

Messrs. JOHNSON & ROBINSON, Mr. LEONARD E. ANDER-
SON, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

ON the first day of September, 1922, Lee & Shay, the
defendants in this action, entered into a feeding contract
with L. T. Winger, by the terms of which Winger received
sixty to seventy-five head of cattle on October 15, 1922,
and promised to feed them for a period of five months
from that date and to deliver them back to Lee & Shay, the
owners, at the stock yards at Brush, Colorado, where, after
being held for a certain period without feed or water be-
fore they were to be weighed, the net gain thereon to be
paid for at the rate of 9 cents per pound; but "if first
party (Winger) wish to deliver steers in 120 days, second
party (Lee & Shay) shall pay 8 cents per pound for gain".
While the cattle were being fed under this contract, Lee
& Shay entered into a written contract with the plaintiffs,
Joe Miller & Company, for the sale of sixty-five head
thereof "subject to a certain feeding contract wherein said
cattle are to be fed until on or about March 13", mean-
ing the foregoing contract. As part of the purchase price
$400 were paid on the execution of the contract of sale.
This contract further provided that the buyers "shall have
the option of exercising their own judgment as to when
they may receive the cattle, providing always, it is in
accordance with the words and meaning of the original
feeding contract between first party and Loyd Winger".

Winger, the feeder, and Lee & Shay, the owners, construed
the feeding contract, though it provided that the cattle
should be fed for a period of five months or until on or
about March 13, 1923, as giving to the feeder the option
of delivering them back to the owners at the end of 120
days from the time he received them, which would be
February 13, 1923. Acting upon this option, several days
before the period of 120 days expired, the feeder notified
the owners, Lee & Shay, that he would deliver these cattle
at the stock yards in Brush, Colorado, at such time.  On
receipt of this notice the owners, Lee & Shay, sent to the
plaintiffs, Miller & Company, a copy of this notice and
further notified them orally of the exercise of the option
by Winger and requested plaintiffs to be present to re-
ceive and pay for the cattle under the contract of sale at
the time of the delivery by the feeder to the owners on
the 13th of February.  Plaintiffs refused and neglected
to receive or pay for the cattle at that time or at any
time thereafter.  Defendants again notified the plaintiffs in
writing that Winger had exercised his option and had
redelivered the cattle on the expiration of 120 days and
again made demand upon plaintiffs to pay the remainder
of the purchase price owing to the defendants and to re-
ceive the cattle, and upon a failure to do so defendants
would sell the same for the best price they could obtain
on the open market and from the amount received thereon
would retain the money due them under the contract and
the expenses of marketing and feeding the cattle from
February 13, 1923, and would pay any surplus over and
above the amount to the plaintiffs.  The plaintiffs refused
to comply with the demand and notice and neglected and
refused to pay the remainder of the purchase price, and
the defendants sold the cattle for the best price that could
be obtained.  The cattle failed to bring at the sale, which
was afterwards made by the defendants, the amount owing
as the balance of the purchase price and the expenses of
the sale.  Plaintiffs thereupon brought this action to re-
cover the damage which they allege they sustained by the

refusal of the defendants to deliver the cattle at the expiration of the period of five months, and on or about March 13, 1923, when delivery was demanded by the plaintiffs in accordance with what they say are the terms of the contract. The foregoing facts are not controverted. They are set forth in the complaint, in the answer and the replication. The defendants' motion for judgment on the pleadings was sustained by the trial court and the action was dismissed at the plaintiffs' cost and they are here with this writ of error.

The contention of the plaintiffs is: (1) That as between the plaintiffs and the defendants the date for the delivery of the cattle was fixed by the contract of sale as March 13, 1923, irrespective of the situation as between the defendants and Winger created by the feeding contract. (2) That the defendants by their contract of sale construed the feeding contract with Winger as requiring delivery on March 13, and that such construction is conclusive between the parties to this action. (3) That if these two contentions be not correct, still the feeding contract between defendants and Winger did not give the latter the right to make delivery on February 13, 1923, against the will of plaintiffs.

The contention of the defendants is that the contract of sale expressly makes the same "subject to a certain feeding contract wherein said cattle are to be fed until on or about March 13", and which also contains the option to plaintiffs as intended by the parties thereto, and so construed by them, to cease feeding on the expiration of 120 days, in which event the feeder was to receive 1 cent per pound less for the net gain.

We think the district court was right in sustaining the defendants' contention and in dismissing the action. We do not find anything in the record, and it consists entirely of the pleadings, which requires the defendants to deliver to the plaintiffs absolutely on the 13th of March and at no other time. The parties to the feeding contract construed it as giving to the feeder the option to cease feeding at

the expiration of 120 days and the right then to deliver them back to defendants at the stock yards at Brush, Colorado. It is true that the sale contract says that the buyers shall have the option of exercising their own judgment as to when they receive the cattle, but this clause is immediately followed by the language "providing always, it is in accordance with the words and meaning of the original feeding contract between the" defendants and Winger. The parties to the feeding contract had construed it as conferring upon the feeder the right or option mentioned. The true meaning of the contract of sale, made as it was, subject to the terms of the feeding contract, was and is that whenever the feeding contract was terminated, as it might be by the feeder at the end of 120 days, the delivery of the cattle to the stock yards at Brush by the feeder to the owners required the plaintiffs under the contract of sale there to accept them. These two contracts are to be construed together in order to ascertain their true meaning. While the option was given to the plaintiffs to exercise their own judgment as to when they might receive the cattle, this discretion was not an absolute one, but must be exercised to conform to the true meaning of the feeding contract. The expression "on or about March 13" of itself might not be held to relate back to February 13. Taken in connection, however, with the other provision "subject to a certain feeding contract" and the provision that the buyers' option as to when they would receive the cattle, must always be restricted by, and conform to, the words and meaning of the feeding contract, convinces us that it was the duty of the plaintiffs to receive and pay for the cattle at the time they were delivered back to the owners by the feeder at the stock yards at Brush, Colorado.

The contention of the plaintiffs in error cannot be sustained. The judgment is therefore affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.